■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WARD WARREN, Appellant. — Judgment, Supreme Court, New York County (Gabel, J.), rendered December 18, 1981, convicting defendant upon his plea of guilty, after denial of his motion to suppress a gun, of the crime of attempted criminal possession of a weapon in the third degree and imposing a conditional discharge upon payment of a fine of $2,500 and an additional $2,500 to be contributed to an organization politically advocating gun control, modified, on the law, to vacate that portion of the sentence directing the $2,500 contribution, and otherwise affirmed.* At the hearing to suppress a .32 caliber pistol seized from defendant's car, the People called Detective Waddell, a 17-year police veteran. He testified that, while on a uniform shift on March 17, 1981 at about 8:00 P.M., he was parked with his partner in a marked squad car facing south on Second Avenue near 16th Street. He saw a robin's egg blue car, with New Jersey plates and with only the operator in it, run a red light crossing 14th Street headed south on Second. He observed also that, of the two color combinations in which New Jersey plates are issued, this car had plates with the blue, not the cream, background. The officer testified that, being St. Patrick's night, traffic was heavy and the blue car was driving at a speed perhaps less than the limit but fast for the traffic conditions. Waddell did not use the siren or his turret light because he was fearful that they might prompt the quarry to greater speed in the crowded streets. It was 15 blocks before defendant was signaled to the curb. Waddell admitted that he lost sight of the car for a few blocks around Houston Street but contends that he regained sight of the same car — robin's egg blue, only the operator in it, blue background New Jersey plates — before he stopped it. When the defendant opened the glove compartment to get the requested registration, the police saw the pistol. In denying suppression, the hearing court gave credence to Waddell's conclusion that the car he stopped was the same car that had run the red light at 14th Street. The court found that the officer had had considerable experience in observing and apprehending traffic offenders. She was impressed by his "careful memory" of colors, robin's egg blue and the blue rather than cream license plates. She found his testimony "clear and convincing", and, indeed, the credibility of his factual testimony is not challenged on appeal. Addressing the point on appeal, we find that given Waddell's credibility, observations and experience, it was reasonable for him to have concluded that the defendant's car was the one that ran the red light. Suppression was properly denied. We need not document here that gun control is a vehemently debated political

* Execution of sentence has been stayed pending this appeal.

issue. It is well known. We find invalid the imposition of a contribution that would advance one side of this controversy. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us" (*Board of Educ. v Barnette,* 319 US 624, 642). Since "[a] contribution serves as a general expression of support" (*Buckley v Valeo,* 424 US 1, 21), a forced contribution is an affiliation by coercion. It is patently unconstitutional. The objections taken by the People — that this was a plea bargain and that defendant failed to preserve his right to appeal by not objecting to the sentence — if otherwise valid, should fall in the face of the serious constitutional issue presented here. Concur — Lupiano, Fein, Lynch and Asch, JJ.

Murphy, P. J., dissents in a memorandum as follows: Detective William Waddell was the sole witness at the suppression hearing. At approximately 7:55 P.M. on March 17, 1981, Detective Waddell and Police Officer Douglas Nedorost were sitting in a police car parked on Second Avenue at Sixteenth Street. The officers were watching the traffic flow in a southerly direction on Second Avenue. They saw the defendant's car drive past them. That car was in the middle lane of traffic. Other cars were traveling in the adjacent lanes and in the area behind the defendant's car. Traffic was heavier than normal on that St. Patrick's Day. Detective Waddell, who stated that his vision was perfect, then observed defendant's car go through a red light on Fourteenth Street and Second Avenue. At that time, the detective saw that the offending car was painted a "robin's egg" blue. He could also see that the car had a New Jersey license plate with a blue background and beige letters. However, Waddell could not determine the "make" of the car from his initial observation, nor could he read the numbering on the plate. The car had no unusual markings. The officers pursued defendant's vehicle without turning on their siren or overhead lights because Second Avenue was too crowded. Detective Waddell believed that the defendant's car was doing more than the speed warranted for the circumstances, but he did not know whether that car was exceeding the speed limit. The officers followed defendant's vehicle for about 15 blocks to Houston Street. The defendant's car was two blocks ahead of them. There were approximately 10 to 15 cars between defendant's vehicle and the patrol car. Waddell did not know whether a man or a woman was driving the car. The officers lost sight of defendant's vehicle between Houston and Delancey Streets. In the area of Canal Street and the Bowery, the officers put their turret lights on and pulled defendant's car to the side. It was then that the officers determined the vehicle was an Oldsmobile and they wrote down its license number. The defendant was asked for his license and registration. He displayed his license but could not find his registration. The defendant used a key to open his glove compartment. At that point both officers saw a gun inside the compartment. The defendant was immediately placed under arrest. The hearing court found Detective Waddell's testimony to be credible and it denied the motion to suppress. At a *Wade* hearing, defendant, who challenges the legality of a search and seizure, has the burden of proving illegality. The People, nevertheless, are put to the burden of going forward to show the legality of the police conduct in the first instance. (*People v Berrios,* 28 NY2d 361, 367.) Of course, an automobile may be stopped for a " 'routine traffic check' " when a police officer reasonably suspects a violation of the Vehicle and Traffic Law (*People v Ingle,* 36 NY2d 413, 414). The overriding question presented upon appeal is whether Detective Waddell actually saw defendant's vehicle go through a red light. It has been said that testimony is incredible

when it is so extraordinarily in conflict with probability or so utterly hostile to reason and intelligence, as to become so nearly impossible that it ought to be believed by the trier of the facts. (*Royce Haulage Corp. v Bronx Term. Garage,* 185 Misc 892.) The testimony of Detective Waddell in this case borders upon the incredible and should thus be rejected. At the hearing, Waddell stated that he saw defendant's car as it passed Sixteenth Street. There is no indication that Waddell gave particular cognizance to that car vis-à-vis the many other cars that were passing. His attention only became focused when he saw a car going through a red light at Fourteenth Street. While an individual with perfect vision may be able to see a car go through a red light from a distance of two blocks at night, a serious question is presented as to whether that individual could distinguish colors at that distance. Further doubt is cast upon Waddell's testimony from the fact that he testified he could distinguish a New Jersey license plate from his parked patrol car. It should be stressed that, admittedly, other cars were traveling in a southerly direction behind defendant's vehicle. Therefore, it was very difficult for Waddell, from his police car, to see defendant's license plate through the other vehicles proceeding south on Second Avenue. Even if Waddell's testimony that he saw a blue car with a New Jersey plate go through a red light is credited, an additional reason exists for granting the motion to suppress. The detective lost sight of the original vehicle for several blocks. The description of the offending car was common to many other vehicles. It is possible that the offending vehicle, which Waddell originally saw, turned from Second Avenue without being observed by the officers. It is also possible that the officers saw a second blue car, defendant's car, and mistook it for the original offending vehicle. Under either eventuality discussed above, the officer did not have reason to suspect that defendant's car went through a red light. Since the stop was unlawful, the gun should have been suppressed (cf. *People v Mason,* 69 AD2d 769). Accordingly, the judgment of the Supreme Court, New York County (Gabel, J.), rendered December 18, 1981, convicting him, upon his plea, of attempted criminal possession of a weapon in the third degree and sentencing him to a conditional discharge and imposing a fine, should be reversed, on the law and the facts, the motion to suppress should be granted and the indictment should be dismissed.